IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

CHRISTOPHER W. KLAES,

        Plaintiff,

vs.                                                                    CASE NO. 1:10-cv-223-MP-GRJ

MICHAEL J. ASTRUE,
Commissioner of Social Security

        Defendant.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") terminating his disability insurance benefits due to medical improvement.  (Doc. 1.)  The Commissioner has answered (Doc. 4), and both parties have filed briefs outlining their respective positions.  (Docs. 14 and 15.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

      Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act (the "Act") on September 21, 2001, alleging a disability onset date of February 21, 1999.  (R. 436, 466-68.)   Plaintiff's application was denied upon both initial review and reconsideration and Plaintiff then filed a timely request for an administrative hearing.  (R. 445-58.)  The administrative hearing was held on June 19, 2003 and Plaintiff was found disabled as of February 21, 1999 in a decision by Administrative Law Judge ("ALJ") Manuel Rodriguez dated July 14, 2003.  (R. 436-42.)

On September 19, 2008 the Commissioner found Plaintiff no longer disabled as of

March 1, 2008 due to medical improvement.  (R. 28-32.)  Plaintiff appealed the

decision, which was denied.  (R. 58-59.)  Plaintiff then filed a timely request for a

hearing before an ALJ.  (R. 63-64.)  A hearing was held on January 8, 2009 and ALJ

Alfred Tutera issued a decision dated May 8, 2009 finding Plaintiff's disability had

creased as of March 1, 2008.  (R. 13-26.)  Plaintiff filed a request for review by the

Appeals Council, which denied Plaintiff's request for review on September 13, 2010. (R.

6-8, 13.)  Plaintiff then filed his Complaint in this case on November 12, 2010.  (Doc. 1.)

## II.  CONTINUING DISABILITY STANDARD OF REVIEW

This case does not involve the review of an initial application for disability

benefits, but rather a review of Plaintiff's continuing disability in order to determine if he

remains eligible to receive benefits. In determining whether a claimant's disability

continues or ends, the Commissioner must determine whether there has been any

medical improvement in the claimant's impairment(s) and, if so, whether the medical

improvement is related to the claimant's ability to work.[1]  In determining whether

medical improvement has occurred the Commissioner will compare the medical severity

of the Plaintiff's impairment(s) at the time of the decision to continue or discontinue

benefits to the medical severity of the impairment(s) when benefits were awarded.[2]

Medical improvement is defined as any decrease in the medical severity of the

---

[1] 20 C.F.R. § 404.1594(a). The definitions and evaluation process governing disability determinations for disability insurance benefits under Title II of the Social Security Act are identical to those governing benefits under supplemental security income, Title XVI of the Act. *See* 20 C.F.R. § 416.101, *et seq*.

[2] 20 C.F.R. § 404.1594(b)(7).

claimant's impairment(s) that was present at the time of the most recent favorable medical decision that the claimant was disabled.[3]  This most recent favorable medical decision that the claimant was disabled is known as the comparison point decision ("CPD").[4]  A finding of a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with the claimant's impairment(s).[5]  Symptoms are the claimant's description of the impairment(s).[6]  Signs are abnormalities which can be observed and must be shown by medically acceptable clinical diagnostic techniques.[7]  Laboratory findings are findings produced by medically acceptable laboratory techniques.[8]  Medical improvement is related to the claimant's ability to do work if there has been a decrease in the severity of the impairment(s) present at the time of the most recent favorable medical decision that the claimant was disabled and an increase in the claimant's functional capacity to do basic work activities.[9]  Section 404.1594(f) of the Code of Federal Regulations outlines the evaluation steps to be taken in reviewing whether a claimant's disability continues. These steps are:

> (1) Is the claimant engaged in substantial gainful activity?  If yes, the claimant's disability status will cease.

---

[3] 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(I).

[4] 20 C.F.R. § 404.1594(b)(7).

[5] *Id.*

[6] 20 C.F.R. §§ 416.928(a), 404.1528(a).

[7] 20 C.F.R. §§ 416.928(b), 404.1528(b).

[8] 20 C.F.R. §§ 416.928(c), 404.1528(c).

[9] 20 C.F.R. § 404.1594(b)(3).

(2) If no, does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 [of the regulations]?

(3) If no, has there been medical improvement in the claimant's condition?  If yes, proceed to Step 4.  If no, the claimant's disability continues.

(4) Is the medical improvement in the claimant's condition related to his ability to work?  If no, proceed to Step 5.  If yes, proceed to Step 6.

(5) If the medical improvement in the claimant's condition is not related to his ability to work, do any of the exceptions[10] listed apply?  If no, the claimant's disability continues.

(6) If the medical improvement is found to be related to the claimant's ability to work, the Commissioner will determine whether all of the claimant's current impairments, in combination, are severe.

(7) If these impairments are severe, the Commissioner will assess the claimant's residual functional capacity to determine whether the claimant can perform his past relevant work.  If the Commissioner determines that the claimant can perform his past relevant work, his disability status will cease.

(8) If the claimant can no longer perform his past relevant work, the Commissioner will assess whether the claimant can do other work considering the claimant's residual functional capacity, age, education and past work experience.  If he can, his disability status will cease.

In the case of a determination as to continuing disability, the court must review

the Commissioner's final decision in terms of both the eight-step analysis outlined

above and the general substantial evidence standard of review.  Therefore, the

appropriate inquiry is "whether the [Commissioner]'s finding of improvement to the point

---

[10] If a claimant meets any of the following exceptions, even if medical improvement has not occurred, the individual can still be found capable of substantial gainful activity if:

(1) The claimant was the beneficiary of advances in medical or vocational therapy or technology (related to the claimant's ability to work).
(2) The claimant has undergone vocational therapy related to his or her ability to work.
(3) Based on new or improved diagnostic or evaluative techniques, claimant's impairment(s) is/are not as disabling as was thought at the time of the most recent favorable decision.
(4) Substantial evidence demonstrates that any prior disability decision was in error.

of no disability is supported by substantial evidence."[11]  Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[12]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[13]  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[14] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[15]

### III. <u>SUMMARY OF THE RECORD</u>

The Plaintiff's challenge to the Commissioner's decision focuses upon the ALJ conclusion that Plaintiff experienced medical improvement as of March 1, 2008, which the Plaintiff contends is unsupported by substantial evidence.

---

[11] <u>Simpson v. Schweiker</u>, 691 F.2d 966, 969 (11th Cir. 1982); *see also* 42 U.S.C. § 405(g).

[12] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995)(citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971))); *accord* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[13] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[14] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992)(holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[15] <u>Keeton v. Dep't Health & Human Servs.</u>, 21 F.3d 1064, 1066 (11th Cir. 1994).

A.      **Personal Background**

Plaintiff was 41 years old as of his January 8, 2009 administrative hearing.  (R. 420.)  He obtained a bachelors degree in art and computer information science.  (*Id.*)

B.      **The Comparison Point Decision**

In the July 14, 2003 comparison point decision ("CPD"), ALJ Manuel Rodriguez concluded Plaintiff was disabled as of February 21, 1999.  (R. 436-41.)  In the CPD, the ALJ concluded Plaintiff had the severe impairments of chronic cervical and lumbar degenerative disc disease with radiculopathy into both his upper and lower extremities. (R. 441.)  The ALJ noted that the medical evidence established Plaintiff suffered from chronic pain in his neck and back with radiculopathy into the upper and lower extremities with limited use of the upper extremities due to tremors.  (R. 440.)

ALJ Rodriguez concluded Plaintiff "lacks the residual functional capacity to lift and carry a significant amount of weight, to sit, stand, and/or walk for any appreciable length of time, to follow directions, or to concentrate on and attend to work tasks on a sustained basis or to sustain work activity during a regular work week."  (R. 441.)  He concluded Plaintiff could not perform his past relevant work as a computer programmer. (*Id.)* The ALJ also concluded Plaintiff's "combination of exertional and nonexertional functional limitations secondary to the claimant's medically determinable impairments erodes his occupational base to the point that there is not a significant number of jobs existent in the national economy that he can perform."  (*Id.*)  ALJ Rodriguez therefore concluded Plaintiff was disabled for Social Security purposes and had been under a disability since February 21, 1999.  (*Id.*)

6

C.     **Evidence Considered By ALJ Tutera in the May 8, 2009 Decision**

The Court will begin with a brief discussion of the evidence ALJ Rodriguez relied

upon in the CPD and then focus its discussion of the record on the medical evidence

relied upon by ALJ Tutera in his May 8, 2009 decision, which consisted of all Plaintiff's

medical records from the CPD onward.

Plaintiff's lower back and spine issues began in 1987 when he was in the military

and were exacerbated when he was involved in several car accidents in January 1999

and April 2000.  (R. 527, 573.)  An MRI scan of his lumbar spine taken in February

1999 reflected disk degeneration associated with a bulge at L5-S1 along with lumbar

muscle spasms, while an MRI of his cervical spine performed the same day showed

bulging disks at C3-C4, C4-C5, C5-C6 as well as "evidence of cervical muscle spasm."

(R. 537-38.)  Plaintiff's neurological evaluation in March 1999 reflected weakness in his

left upper extremity and lower right extremity along with possible bilateral lumbar

radiculopathy.  (R. 541-42.)  AN MRI of Plaintiff's thoracic spine in September 2000

reflected normal results.  (R. 533.)  Plaintiff reported to the Veterans Administration

medical facilities in Tampa, Florida ("Tampa VA") for medication and physical therapy in

connection with his lower back and spine issues multiple times between April 2001 and

April 2003.  (R. 569-711.)

The majority of Plaintiff's medical records are from the Veterans Administration

facilities in Gainesville, Florida ("Gainesville VA").  On August 1, 2007, Fred Schert,

M.D. conducted an examination of Plaintiff at the Gainesville VA for compensation and

pension evaluation purposes.  (R. 146-58, 263-75.)  Although Plaintiff reported

numbness and weakness in both his upper and lower extremities, the doctor detected

7

no weakness in either area on examination and the extremities all responded normally

to light touch sensation. (R. 155, 273.)  Dr. Schert wrote that Plaintiff "does not

evidence, in my opinion, lumbar intervertebral disk syndrome on physical examination,

although his recent history is consistent with lumbrosacral degenerative disk disease."

(R. 157, 274.)  Dr. Schert further noted "[t]here is no evidence that the veteran

sustained cervical spine injury in the military" and noted Plaintiff's previous diagnosis of

a cervical spine injury was based upon an "Andron's maneuver, a rather extreme

extension of the arm and lateral bending of the neck which could produce subjective

symptoms in even a normal person." (*Id*.)   His conclusion was Plaintiff suffered from

L5-S1 degenerative disk disease, sensation disorder, and "[n]o evidence today of

lumbar or lumbosacral radiculopathy." (*Id.*)

Plaintiff attended multiple smoking cessation therapy sessions at the Gainesville

VA between November 2007 and March 2008. (R. 177-80, 185-86, 196, 198-99.)

Plaintiff spoke to a Social Security representative on February 5, 2008 and reported "he

is able to care for all activities of daily living with some limitations." (R. 122.)  Plaintiff

also reported being able to do laundry, cook and shop, and also reported he had

recently driven 3 hours to St. Petersburg, Florida. (*Id*.)  Plaintiff did report suffering

occasional tremors every day, but stated they were more controlled and less jerky than

previously had been the case. (*Id.*)

Lance I. Chodosh, M.D. performed a consultative physical examination of

Plaintiff on February 18, 2008. (R. 342-49.) On examination, there was no edema,

cyanosis, clubbing, deformity or varicosity in Plaintiff's extremities and no deformity,

tenderness or paraspinal muscular spasms in Plaintiff's back or spine.  (R. 344.)

Plaintiff complained of generalized pain in his neck and back, but his straight leg raise

was negative to 90 degrees bilaterally.  (*Id.*)  Plaintiff's standing balance was normal,

his gait was normal and he was able to squat and rise.  (*Id.*)  Dr. Chodosh concluded

Plaintiff suffered from chronic pain in his neck, back, and extremities "without physical

signs of impairment" and further opined Plaintiff "is able to stand, walk, sit, stoop, squat,

kneel, lift, carry, handle objects, see, hear, and speak normally."  (R. 345.)

State agency consulting physician Reuben Brigety, M.D. completed a physical

RFC form dated February 25, 2008 in which he opined Plaintiff could occasionally lift

and carry 20 pounds, frequently lift or carry 10 pounds, and sit, stand or walk for six

hours in an eight hour day.  (R. 350-54.)  In support of this conclusion, he noted

Plaintiff's "symptoms exceed expectations based on objective evidence in file."  (R.

355.)

On April 2, 2008 Laliltha Ganesh, M.D. performed an examination of Plaintiff at

the Gainesville VA.  (R. 158-59.)  Dr. Ganesh noted Plaintiff's active range of motion

was normal at all joints and his strength and reflexes in the upper and lower extremities

were also normal.  (R. 158)  Plaintiff's active range of motion in both the cervical and

lumbar spine was normal, while in the thoracic spine there was normal rotation but

limitation in Plaintiff's lateral flexion due to pain.  (*Id.*)  His straight leg raise test was

normal.  (*Id.*)

As part of her examination of Plaintiff, Dr. Ganesh also ordered a functional

capacity evaluation.  (R. 159.)  Bruce A. Mueller, an occupational therapist, performed

9

Plaintiff's functional capacity evaluation on April 2, 2008 and issued a lengthy report, co-signed by Dr. Ganesh.  (R. 159-77.)  The report concluded Plaintiff is "able to work at the LIGHT-MEDIUM Physical Demand Level for an 8 hour day" and Plaintiff "is able to return to his usual and customary job as a Computer Programmer as his physical abilities appear to be commensurate with that job."  (R. 159.)  In support of this conclusion, the report noted "By his own report the patient noted that he had inpatient pain management and he is functioning better and with less pain" than when Plaintiff was first granted disability benefits.  (R. 160.)  The report further reflected Plaintiff "exhibited symptom/disability exaggeration behavior."  (R. 160.)   Plaintiff's scores on the Blankenship Reliability Profile – which is used to measure the exaggeration of symptoms –  reflected Plaintiff was "attempting to control the test results to demonstrate a greater level of disability than what is actually present."  (R. 172.)

On May 14, 2008, state agency consulting physician Eric Puestow, M.D. completed a Physical RFC form and concluded "[s]ignificant medical improvement related to the ability to work is clearly demonstrated."  (R. 372-74.)  In support of this conclusion, he noted Plaintiff's "[p]hysical allegations are poorly supported by the data." (R. 377.)

On January 5, 2009, Plaintiff had a cervical MRI scan performed, which reflected normal alignment of the cervical spine, mild degenerative disk disease at C3-C4, C4-C5, C5-C6 and C6-C7.  (R. 407.)  It also reflected "Small right paracentral disc protrusion C3-C4  Mild cervical spondylosis stenosis C4-C5 with moderate neural foraminal narrowing and mild central stenosis without cord compression.  Probable benign hemangioma C5 vertebral body.  Mild annular disc bulging C5-C6."  (*Id.*)  An

MRI of Plaintiff's lumbar spine taken the same day reflected normal alignment of the

lumbar spine, a small 3 millimeter schwannoma at L2, and mild degenerative disc

disease and a small left paracentral disc protrusion at L5-S1. (R. 408.)  An MRI of

Plaintiff's thoracic spine reflected a completely normal thoracic spine.  (R. 409.)

  **D.** **Hearing Testimony**

   Plaintiff testified at his January 8, 2009 administrative hearing.  He testified he

suffers from neck pain that radiates into his arms and legs and causes muscle spasms.

(R. 420.)  He also suffers from lower back pain that radiates into his legs, causing

numbness, tremors and muscle spasms.  (*Id.*)  The more physical work Plaintiff

attempts to do, the more frequent and intense the spasms become.  (R. 427.)  With

respect to his activities of daily living, Plaintiff drives to his sister's home to visit with his

nephew and to the grocery store, walks for twenty minutes in the morning and

sometimes also in the evening, stretches with resistance bands, reads, watches

television, and takes a 2-3 hour nap after lunch.  (R. 423-24.)  With respect to his

functional abilities, Plaintiff testified he could lift 10 pounds without pain, stand for 30-45

minutes at a time, walk for 20 minutes at a time, and sit for 45 minutes at a time.  (R.

425-26.)  If Plaintiff tries to sit for longer than 45 minutes, he begins to have pain, which

then increases to the point where it causes numbness and muscle spasms, requiring

him to get up, move around and stretch.  (R. 426.)

  **E.** **The Findings of ALJ Tutera in the May 8, 2009 Written Decision**

   In the May 8, 2009 decision, ALJ Tutera noted Plaintiff had the impairments of

cervical and lumbar degenerative disc disease with radiculopathy and further concluded

Plaintiff did not develop any additional impairments between the CPD and March 1, 2008.  (R. 20.)  The ALJ concluded that since March 1, 2008 Plaintiff did not have an impairment or combination of impairments that met or equaled the Listings.  (*Id.*)  He further concluded medical improvement had occurred as of March 1, 2008.  (*Id.*)  ALJ Tutera further determined, as of March 1, 2008, the impairments present at the time of the CPD had decreased in medical severity to the point where Plaintiff had the RFC to perform the full range of light work.  (R. 21.)

ALJ Tutera also determined Plaintiff's medical improvement was related to his ability to work because it resulted in an increase in his RFC.  (R. 25.)  ALJ Tutera concluded that as of March 1, 2008 Plaintiff had been capable of performing his past relevant work as a computer programmer, both as Plaintiff had actually performed that position as well as how that position is generally performed within the national economy.  (R. 26.)  Accordingly, ALJ Tutera concluded Plaintiff's disability ceased as of March 1, 2008.  (*Id.*)

## IV.  DISCUSSION

Plaintiff contends that ALJ Tutera's decision is not supported by substantial evidence. According to Plaintiff, his medical condition has "obviously deteriorated" and there is no record of any clinical improvement in his condition since the CPD.

In concluding that Plaintiff experienced medical improvement, ALJ Tutera extensively reviewed all of the medical and other evidence in the record.  (R. 20-25.) He considered Plaintiff's testimony at the January 8, 2009 hearing as well as Plaintiff's statements to a Social Security representative in a Report of Contact dated February 5,

2008.  (R. 21-22, 23.)  The ALJ then reviewed Plaintiff's medical records from his visits

to the VA , noting particularly the examinations and functional capacity evaluation

performed by Dr. Ganesh/Bruce Mueller and Dr. Chodosh, the consulting physician.

(R. 22-25.)  ALJ Tutera also considered the opinions expressed by the state agency

medical consultants and gave great weight to the opinion of one consultant while giving

little weight to the opinions expressed by another.  (R. 24-25.)  On the basis of this

evidence, ALJ Tutera concluded "medical improvement is demonstrated since the CPD

with better control of tremor disorder and reasonably full activities of daily living

maintained."  (*Id.*)

Having carefully reviewed the record and ALJ' Tutera's written decision, the

Court concludes that ALJ Tutera's finding that Plaintiff experienced medical

improvement is well supported by the substantial evidence in the record.  To begin with,

Plaintiff's medical records from the VA demonstrate significant medical improvement.

In an August 1, 2007 examination, Dr. Schert reported that he did not detect any

weakness or numbness in Plaintiff's upper or lower extremities despite Plaintiff's reports

to the contrary.  (R. 155, 278.)  Based upon the examination, Dr. Schert concluded

Plaintiff had  degenerative disk disease at L5-S1 but found there was no evidence of

lumbar or lumbrosacral radiculopathy.  (R. 157, 174.) Notably, Dr. Schert questioned

Plaintiff's previously diagnosed cervical spine disorder as being based on an "extreme"

testing maneuver.  (*Id.*)

The April 2, 2008, examination by Dr. Laliltha Ganesh at the VA also supports

the ALJ's finding that Plaintiff had medical improvement. Dr. Ganesh concluded that

Plaintiff's range of motion in his cervical, thoracic and lumbar spine was normal and

13

Plaintiff's straight leg raise was negative.  (R. 158.)   In addition to the examination Dr.

Ganesh ordered a functional capacity evaluation. The thorough functional capacity

evaluation, co-signed by Dr. Ganesh, concludes that Plaintiff could work at the light-

medium level and that Plaintiff could return to his past relevant work as a computer

programmer.  (R. 159.)

The ALJ's finding that Plaintiff experienced medical improvement is also

supported by the fact that between September 2006 and April 2008 Plaintiff did not

receive any medical treatment for his neck and back pain. The VA medical records from

September 2006 through April 2008, while containing a notation of "low back pain"  (R.

138-45), fail to contain any evidence of treatment for low back pain and fail to contain

any notations that Plaintiff experienced tremors or an inability to sit as Plaintiff

contends.  Indeed, most of the visits to the Gainesville VA between 2006 to 2008 were

for the purpose of attending smoking cessation therapy, and not for treatment for lower

back or neck pain.  (R. 177-80, 185-86, 196, 198-99.)  Moreover, while Plaintiff sought

treatment for his lower back pain at the Tampa VA from April 2001 through April 2003,

there are no medical records for the period from 2003 through 2006, evidencing that

Plaintiff sought medical treatment for his back and neck pain.  (R. 569-711.)  In sum,

the record does not include any evidence that Plaintiff received any medical treatment

for his lower back and spine issues at the Gainesville VA or at the Tampa VA from the

date of the CPD to the time of Plaintiff's January 8, 2009 administrative hearing.

In addition to the examinations by Drs. Schert and Ganesh, the results of Dr.

Chodosh's consultative examination and the opinions of the non-examining state

agency physicians also fully support the ALJ's conclusion that Plaintiff experienced

medical improvement.  Dr. Lance Chodosh performed a consultative physical examination in February 2008. The report discloses that despite Plaintiff's complaints of generalized pain in his neck and back the straight leg raise test was negative. (R. 344.) Dr. Chodosh concluded Plaintiff suffered from chronic pain in his neck, back and extremities "without physical signs of impairment" and could stand, sit, walk, stoop, squat, lift, carry and handle objects normally.  (R. 345.)  Additionally, one of the state agency medical consultants also concluded Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and sit, stand, and/or walk for 6 hours in an 8 hour day.  (R. 350-54.)

Plaintiff's statements regarding the severity of his continued symptoms is inconsistent with Plaintiff's activities of daily living. Plaintiff testified at his administrative hearing that he cannot sit for longer than 45 minutes without experiencing pain, numbness and muscle spasms.  (R. 421-24.)  In contrast, Plaintiff stated to a Social Security representative on February 5, 2008, that he could perform virtually all activities of daily living, albeit with some limitations, including driving for up to three hours at a time.  (R. 122.)  The Report of Contact from this conversation also discloses that Plaintiff represented to the individual from Social Security that his tremors had become more controlled and less jerky compared to his previous condition.  (Id.)

The ALJ also noted that several of the examining doctors questioned whether Plaintiff was exaggerating his symptoms.  The functional capacity evaluation ordered by Dr. Ganesh at the VA contains the notation that Plaintiff "exhibited symptom/disability exaggeration behavior" and was "attempting to control the test results to demonstrate a greater level of disability than what is actually present."  (R. 160, 172.)

15

Finally, the ALJ took into consideration Plaintiff's January 2009 MRI scan, which contrary to Plaintiff's argument, does not evidence that his condition had worsened. The January 8, 2009 MRI scan of Plaintiff's thoracic spine reflect that Plaintiff had a normal thoracic spine with no focal disc protrusion and no significant central or neural foraminal stenosis. With regard to the cervical and lumbar spine the MRI revealed only mild degenerative disc disease, a mild disc protrusion at C3-C4, some mild annular disc bulging at C5-C6, a small disc protrusion at L5-S1 and  a small 3 millimeter schwannoma at L5-S1.  (R. 408-09.)  While this MRI scan continues to reflect some mild disc degenerative disease, the findings do not disclose any cord compression and only mild to moderate stenosis and neural foraminal narrowing, all of which is consistent with ALJ Tutera's conclusion that Plaintiff's condition was not as debilitating as Plaintiff suggested.

Accordingly, for these reasons, the Court concludes that the substantial evidence of record more than sufficiently supports the ALJ's decision that Plaintiff experienced medical improvement to the extent that Plaintiff's disability ceased as of March 1, 2008.

## V.  **RECOMMENDATION**

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**IN CHAMBERS** in Gainesville, Florida, on December 27, 2011.

*s/ Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

16

## NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.